IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER CORDOVA and
TIMOTHY BERG, individually and on             No. 03:14-cv-01663-HZ
behalf of all others similarly situated,

            Plaintiffs,

                              OPINION & ORDER
    v.

FEDEX GROUND PACKAGE SYSTEMS, INC.

              Defendant/Third-Party Plaintiff,

    v.

HONEY FROM THE ROCK, LLC and
TBERG TRANSPORT, INC.

             Third-Party Defendants.

Steve D. Larson
Mark A. Friel
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204

      Attorneys for Plaintiffs/Third-Party Defendants

1 - OPINION & ORDER

Robert C. Weaver
Eryn Karpinski Hoerster
GARVEY SCHUBERT BARER
121 S.W. Morrison Street, 11th Floor
Portland, Oregon 97204

Guy P. Michelson
Emily J. Harris
CORR CRONIN MICHELSON
        BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 2900
Seattle, Washington 98154

        Attorneys for Defendant/Third-Party Plaintiff

HERNANDEZ, District Judge:

        Plaintiffs Christopher Cordova and Timothy Berg, individually and on behalf of all others similarly situated, bring this wage action against Defendant FedEx Ground Package System, Inc. Plaintiffs' claims are based on their allegation that Defendant improperly treated them as independent contractors when they were actually employees.

        Defendant has been sued in this Court in two similar class action cases:  Slayman v. FedEx Ground Package Sys., Inc., No. 03:05-cv-01127-HZ and Leighter v. FedEx Ground Package Sys., Inc., No. 03:07-cv-00818-HZ.  Both cases were transferred to the Northern District of Indiana which was designated a Multidistrict Litigation (MDL) Court for similar cases filed in approximately forty states.  After ruling in favor of Defendant on the question of employee status, the cases were remanded back to the District of Oregon to resolve one remaining claim of rescission for which class certification had not been granted.  Upon transfer back to Oregon in 2011, Slayman and Leighter were assigned to me.  I consolidated the cases and then, in a May 25, 2012 Opinion, granted summary judgment to Defendant on the rescission claim.

2 - OPINION & ORDER

Plaintiffs appealed the MDL Court's determination on the employee-independent contractor issue.  On August 24, 2014, the Ninth Circuit concluded that the members of the Slayman and Leighter classes were employees as a matter of law and ordered that the cases be remanded to this Court for entry of summary judgment in favor of Plaintiffs and class members on the issue of employment status.  Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033 (9th Cir. 2014).

As noted by the Ninth Circuit, the Slayman/Leighter cases together represent two classes comprising approximately 363 individuals who were drivers for Defendant in Oregon at any time between 1999 and 2009.  Id. at 1037.  The instant case, Cordova, picks up where the Slayman/Leighter cases left off.  As alleged in the First Amended Complaint in Cordova, Defendant allegedly violated Oregon law after July 27, 2009 through the present by continuing to misclassify its drivers as independent contractors.  First Am. Compl. at ¶ 4.  Plaintiffs bring Cordova on behalf of those drivers working for Defendant after July 27, 2009, but only to the extent such drivers are not included within the class definitions in Slayman/Leighter, and/or to the extent they have damages that remain uncompensated by Slayman/Leighter.  Id.  In a status conference held in Cordova in December 2014, counsel indicated that Cordova would be procedurally aligned with Slayman/Leighter after class certification and dispositive motions are resolved.  Thus, the Slayman/Leighter cases remain idle until Cordova catches up.

Defendant responded to the First Amended Complaint raising thirty affirmative defenses. Additionally, in that pleading, Defendant brings a Third-Party Complaint against Honey from the Rock, LLC and Tberg Transport, Inc.  Presently, those Third-Party Defendants move to dismiss

the third-party claims against them.[1]  I grant the motion.

BACKGROUND

In the First Amended Complaint, Plaintiffs allege that despite being tightly controlled and regulated by Defendant, they are "nevertheless called independent contractors" by Defendant. First Am. Compl. at ¶ 2.  They contend that the Operating Agreements they are required to sign with Defendant contain various statements purporting to classify Plaintiffs and class members as independent contractors while at the same time retaining various rights to Defendant.  Id. at ¶ 12. They recite several facts which they contend establish Defendant's right to control them.  E.g., id. at ¶ 16.  Despite these facts which allegedly demonstrate that the drivers are employees, Plaintiffs assert that Defendant misclassifies its drivers as independent contractors which deprives the drivers of the rights and protections guaranteed to them by Oregon law.  Id. at ¶ 17.

In their First Claim for Relief, Plaintiffs allege that they and the class are employees as defined under Oregon law and are not free from Defendant's control and direction.  Id. at ¶ 31. They contend that Defendant unlawfully withheld part of their compensation to pay for business expenses which should have been borne by Defendant, including but not limited to vehicle expenses, cargo claims, and insurance claims, in violation of Oregon Revised Statute § (O.R.S.) 652.610.  Id. at ¶ 32.  They allege that they have suffered substantial losses and have been deprived of compensation to which they were entitled.  Id. at ¶ 33.  They seek damages

---

[1]  In response to the motion, Defendant also separately moved to amend the third-party complaint.  In an April 27, 2015 Order, I denied that motion as moot because under Federal Rule of Civil Procedure 15(a)(1)(B), Defendant was permitted to amend the third-party complaint without leave of court.  The Amended Third-Party Complaint was formally filed on April 29, 2015.  As explained in the April 27, 2015 Order, I consider the Motion to Dismiss to have been brought against the Amended Third-Party Complaint.

amounting to the greater of monetary or statutory damages, civil penalties, prejudgment interest, costs, and reasonable attorney's fees. Id.

In their Second Claim for Relief, Plaintiffs allege that this unlawful withholding or deduction from their compensation separately violates O.R.S. 652.140 by failing to pay Plaintiffs all compensation due to Plaintiffs at the termination of their employment relationship with Defendant. Id. at ¶ 36. They seek damages in the amount of their respective unpaid wages and penalties under O.R.S. 652.140 and 652.150, as well as costs and attorney's fees under O.R.S. 652.200(2). Id.

In the Amended Third-Party Complaint, Defendant alleges that Honey from the Rock, LLC is an Oregon limited liability company which had a written Operating Agreement with Defendant from January 1, 2009 to April 1, 2011. Am. Third-Party Compl. at ¶ 1. Plaintiff Cordova was allegedly employed by Honey From the Rock to assist that company in performing its obligations to Defendant during time periods relevant to the claims asserted in the First Amended Complaint. Id. Similar allegations are made about Tberg Transport, Inc., which is alleged to be an Oregon corporation which had a written Operating Agreement with Defendant from December 11, 2010 to September 2, 2014. Id. at ¶ 2. Tberg Transport employed Plaintiff Berg to assist Tberg Transport in performing its obligations to Defendant. Id.

Defendant alleges that Third-Party Defendants were responsible for managing Plaintiffs' employment, including deciding who would perform particular services to satisfy Third-Party Defendants' contractual responsibilities under their Operating Agreements with Defendant. Id. at ¶ 3. According to Defendant, Third-Party Defendants had discretion to hire and terminate their own employees, including Plaintiffs, instructed employees to perform a variety of tasks related to

5 - OPINION & ORDER

the Operating Agreements, and supplied the vehicles and other equipment and tools used by

Plaintiffs to perform services pursuant to the Operating Agreements.  Id.  Third-Party Defendants

allegedly had sole responsibility for setting and paying Plaintiffs' wages, along with calculating

and withholding any deductions.  Id.

Defendant alleges that pursuant to the Operating Agreements, Third-Party Defendants

undertook contractual obligations to Defendant including an obligation to indemnify Defendant

against claims or liabilities related to the relationship between Third-Party Defendants and their

employees, to bear all expenses associated with employment of their employees, and to treat all

of their personnel as their own employees for all purposes.  Id. at ¶ 4.  Defendant alleges that

Third-Party Defendants enjoyed various benefits by contracting with Defendant.  Id. at ¶ 11.

Defendant asserts that it would not have entered into the Operating Agreements if Third-

Party Defendants had not promised to comply with state and federal laws governing the

relationships between Third-Party Defendants and their employees, including laws governing

proper deductions.  Id. at ¶ 12.  Defendant also would not have agreed to enter into the Operating

Agreements if Third-Party Defendants had not promised to indemnify Defendant against any

claims relating to Third-Party Defendants' compliance with Oregon law.  Id. at ¶ 13.

Defendant brings three claims against Third-Party Defendants.  First, Defendant brings a

breach of contract claim alleging that Third-Party Defendants "undertook a contractual obligation

to indemnify and hold harmless FedEx Ground against claims or liabilities related to the

relationship between Third-Party Defendants and their employees."  Id. at ¶ 17.  Defendant

alleges that Third-Party Defendants have breached their contractual duties and that as a result,

Defendant has suffered and will continue to suffer damages.  Id. at ¶¶ 18, 19.

6 - OPINION & ORDER

The second claim is also a breach of contract claim. Defendant alleges that Third-Party Defendants "undertook contractual obligations to bear all expenses associated with employment of their employees and to treat all of their personnel as their own employees for all purposes." Id. at ¶ 21. Defendant further alleges that Third-Party Defendants "undertook contractual obligations to bear sole responsibility for compliance with all applicable laws regarding Plaintiffs' payroll deductions." Id. at ¶ 22. Defendant alleges that "[i]f Plaintiffs are adjudged to have been employees of FedEx Ground during time periods relevant to the claims asserted in the First Amended Complaint, Third-Party Defendants would be in breach of their contractual duties" and that Defendant will suffer damages as a result. Id. at ¶¶ 23, 24.

The third claim is one for unjust enrichment. Defendant alleges that Third-Party Defendants enjoyed certain benefits by contracting with Defendant as independent contractors, were aware of those benefits, and that if Plaintiffs prevail on their claims against Defendant, Third-Party Defendants would be unjustly enriched by retaining benefits conferred on them by Defendant. Id. at ¶¶ 26, 27, 28.

STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not

7 - OPINION & ORDER

necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations") (internal quotation marks, citation, and alterations omitted).

A Rule 12(b)(6) motion will be granted if a plaintiff alleges the "grounds" of his

"entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"

Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(internal quotation marks omitted). Additionally, "only a complaint that states a plausible claim

for relief survives a motion to dismiss." Id. at 679. A complaint must contain "well-pleaded

facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at

679.

## DISCUSSION

Third-Party Defendants seek dismissal of all three third-party claims against them

because (1) Defendant fails to sufficiently allege the bases for its third-party claims; (2) the

alleged contractual provisions do not apply to Plaintiffs' claims against Defendant; (3) Defendant

has not alleged that the parties to any alleged agreement intended to indemnify Defendant for its

own conduct; (4) Defendant fails to allege sufficient facts to support its unjust enrichment claim;

and (5) Defendant's third-party claims attempt to shield Defendant from the application of

Oregon wage laws which is contrary to the public policy of Oregon.  I reject the first argument in

light of Defendant's now operative Amended Third-Party Complaint which quotes various

contractual provisions in support of the claims.  Additionally, in response to the motion to

dismiss, Defendant submits copies of the relevant contract documents which I consider to be

incorporated into the Amended Third-Party Complaint.  <u>Coto Settlement v. Eisenberg</u>, 593 F.3d

1031, 1038 (9th Cir. 2010) (court may consider materials as incorporated into the complaint

when complaint necessarily relies upon a document, the document's authenticity is not in

question, and there are no disputed issues as to the document's relevance).  I address Third-Party

Defendants' remaining arguments as necessary.

I.  Application of Contractual Provisions to Plaintiffs' Claims Against Defendant

    A.  Breach of Contract - Indemnification

    Defendant alleges that the Operating Agreements contained provisions under which the

Third-Party Defendants agreed to "[h]old FedEx Ground harmless from any liability and claims

by others . . . arising from [Third-Party Defendants'] relationship with [Third-Party Defendants']

employees . . . whether under industrial accident prevention laws or any other federal, state or

municipal laws applicable to the relationship between employers and employees."  Am. Third-

Party Compl. at ¶ 5; <u>see also</u> Ex. A to Harris Decl. at p. 17 (§2.2(d) of Op. Agmt); Ex. B to

Harris Decl. at p. 14 (§ 2.2(d) of Op. Agmt); Ex. C to Harris Decl. at p. 17 (§ 2.2(d) of Op.

Agmt).  Further, Defendant alleges that the Third-Party Defendants agreed to indemnify and save

FedEx Ground harmless against liabilities for

    [a]ny or all claims brought against FedEx Ground and liabilities incurred by

9 - OPINION & ORDER

FedEx Ground arising from the [Third-Party Defendants'] relationship with [Third-Party Defendants'] employees, whether under industrial accident prevention laws, or any other federal, state or municipal laws, rules, regulations and orders applicable to the relationship between employers and employees; [and for]

[a]ny and all claims brought against FedEx Ground or liabilities incurred by FedEx Ground for or on account of [Third-Party Defendants'] failure or failure of [Third-Party Defendants'] agents, servants, or employees to comply with any laws, rules, regulations or orders applicable to [Third-Party Defendants'] business[.]

Id.; see also Ex. A to Harris Decl. at pp. 21-22 (§3.5(d), (e) of Op. Agmt.); Ex. B to Harris Decl. at 17 (§ 3.5(d), (e) of Op. Agmt.); Ex. C to Harris Decl. at 22 (§ 3.5(d), (e) of Op. Agmt.).

Third-Party Defendants argue that the indemnity provisions of the Operating Agreements do not apply to Plaintiffs' claims against Defendant because those claims are not against the Third-Party Defendants and do not concern Plaintiffs' relationship with them. The claims by Plaintiffs concern Plaintiffs' relationship with Defendant and do not mention or relate to Third-Party Defendants.

Third-Party Defendants rely on a 2008 decision by Judge Brown in a similar case. Phelps v. 3PD, Inc., No. 03:08-cv-00387-HU, 2008 WL 4911909 (D. Or. Nov. 12, 2008). In Phelps, two individual plaintiffs brought wage and other claims against the defendant alleging that the defendant "purposefully misclassified" the plaintiffs and others similarly situated who provided home-delivery services as independent contractors when they were actually the defendant's employees. Id. at *1. The defendant brought a counterclaim for indemnity against plaintiff Phelps, contending that he did business with defendant as a limited liability company (LLC) pursuant to an operating agreement in which he allegedly agreed to provide transportation services to the defendant. Id. at *1, *3; see also Ex. 1 to Friel Decl. (excerpt from Answer in

Phelps containing counterclaim allegations).  In support of the counterclaim, the defendant

alleged that the claims asserted by the other individual plaintiff, Lugauer, and any expenses the

defendant incurred in defending against those claims, "arise out of and relate to Phelps'

relationship with Lugauer (or any other employee or substitute hired or retained by Phelps)."  Ex.

1 to Friel Decl. at ¶ 126.  Pursuant to the operating agreement with Phelps, the defendant alleged

that Phelps had to indemnify the defendant from all costs, expenses, damages, etc.  Phelps, 2008

WL 4911909, at *3; Ex. 1 to Friel Decl.

     The plaintiffs moved to dismiss the counterclaim.  Judge Brown observed that the

"contractor" in the operating agreement was identified as "David Phelps, dba Dave Phelps

Trucking LCC [sic]."  Id. at *2.  The relevant indemnity provision provided, in part, that the

"contractor" would indemnify and hold the defendant "harmless from and against any liability

and claims by others . . . arising from or relating to CONTRACTOR'S relationship with

CONTRACTOR'S employees . . . whether under industrial accident prevention laws, workers'

compensation laws or any other federal, state, or municipal laws applicable to the relationship

between employers and employees."  Id.

     With the contract provisions fully disclosed, Judge Brown dismissed the counterclaim

because

> the claims asserted by Plaintiffs are based on Defendant's allegedly improper
> classification of Plaintiffs as independent contractors rather than employees.  Such
> allegedly improper classification does not arise from or relate to Plaintiffs'
> relationship with Plaintiffs' employees . . . or from Plaintiffs' omissions resulting
> from or arising out of the operation of the equipment.

Id. (internal quotation marks, ellipses, and brackets omitted).  In other words, the plaintiffs'

claims arose out of or were related to their relationship with the defendant and did not arise out

11 - OPINION & ORDER

of their relationship with their own employees.  As such, the indemnity provision did not apply to the plaintiffs' claims.

The contractual language at issue in Phelps is nearly identical to the language in the Operating Agreements here.  Third-Party Defendants argue that the result should be the same as in Phelps:  the indemnity provisions have no application to Plaintiffs' claims.

In response, Defendant argues that Third-Party Defendants' argument misses the point and that Phelps is distinguishable.  First, Defendant contends that the fact that Plaintiffs are not seeking relief against the Third-Party Defendants in their First Amended Complaint is irrelevant.  For the purposes of assessing the viability of the third-party claims, Defendant argues that its allegation that Plaintiffs were employed by the Third-Party Defendants controls.  Once it is understood that the individual Plaintiffs were employees of the Third-Party Defendants, then, Defendant argues, Plaintiffs' claims arise from the relationship between the Third-Party Defendants and Plaintiffs because Plaintiffs seek recovery for alleged illegal deductions which could only have been taken by their employing entities - the Third Party Defendants.

As to Phelps, Defendant suggests that the indemnity counterclaim in that case was based on an operating agreement between the plaintiff and the defendant, whereas in this case the Operating Agreements are between Defendant and Third-Party Defendants.  Thus, Defendant continues, the indemnity claim in Phelps was brought against the plaintiffs themselves and not against a third-party that employed the plaintiffs.  Defendant argues that unlike in Phelps, the facts here "fall squarely within the indemnity provision" of the applicable Operating Agreements "because it is the employees (the Plaintiffs) of the contracting party (the Third-Party Defendants), not the contracting party itself, that are asserting claims against the Defendant."  Def.'s Opp. at 8.

12 - OPINION & ORDER

Third-Party Defendants argue that Defendant attempts to re-draft Plaintiffs' First Amended Complaint to make it fit within the alleged contractual indemnity provisions. They contend that Defendant's focus on its allegations in the Third-Party Complaint is misplaced because Defendant must allege facts showing that the contractual indemnity language applies to the claims as alleged by Plaintiffs in their First Amended Complaint. Third-Party Defendants state that Plaintiffs' claims depend on proof that Defendant misclassified them as independent contractors when they were actually employees, and as employees of Defendant, Defendant unlawfully failed to make proper deductions from their wages and pay them all wages due upon termination. As a result, under those allegations, they argue that the alleged contractual provisions do not apply to their claims.

Furthermore, Third-Party Defendants contend that the counterclaim in Phelps is not distinguishable. The counterclaim was brought against plaintiff Phelps whom the defendant alleged had employed Lugauer. In the counterclaim, the defendant alleged that the operating agreement's indemnity provision entitled the defendant to be indemnified as to the claims of Lugauer. Thus, Third-Party Defendants argue that the relationship between Phelps, Lugauer, and the defendant in Phelps is the same as presented here: Phelps's LLC employed Lugauer and the defendant sought indemnity from Phelps for the claims brought against the defendant by Lugauer. Here, the Third-Party Defendants allegedly employed Plaintiffs and Defendant seeks indemnity from the Plaintiffs' LLC or corporation for the claims brought against Defendant by the Plaintiffs.

The same result should occur here. As to Phelps, the only difference is that the defendant in Phelps did not bring the counterclaim against Phelps's LLC but brought it against Phelps

13 - OPINION & ORDER

individually, likely because the contracting party was identified as David Phelps, dba Dave

Phelps Trucking LLC.  The defendant in Phelps perhaps could have brought a third-party

indemnity claim against the LLC instead of a counterclaim against the individual Phelps.  But, in

the end, the distinction is without meaning as either way, the application of the indemnity claim

as to the claims brought by Lugauer is no different than the application of the indemnity claim

Defendant asserts here:  Lugauer (Plaintiffs here) had an employment relationship with another

person/entity (Third-Party Defendants here) who had an indemnity agreement with the defendant

(Defendant here) and thus, that person/entity (Third-Party Defendants here) should indemnify the

defendant (Defendant here) for claims brought by Lugauer (Plaintiffs here) against the defendant

(Defendant here).  The fact that the claim in Phelps was brought against Phelps as opposed to his

LLC had no bearing on Judge Brown's conclusion that the fundamental allegation of the

plaintiffs' claims, the alleged improper classification as independent contractors rather than

employees, did not arise from or relate to the plaintiffs' relationship to the plaintiffs' employees.

Additionally, an indemnity claim presumes the existence of a pre-existing, independent

claim asserted against Defendant, not one created by Defendant's own allegations.  The

controlling allegations are the claims as brought and framed by Plaintiffs.[2]  Accordingly, I reach

the same conclusion that Judge Brown did in Phelps:  the indemnity provisions in the Operating

Agreements at issue here in which Defendant is indemnified for liabilities and claims arising

from the Third-Party Defendants' relationships with their employees, do not apply to Plaintiffs'

---

[2]  Even Defendant seems to recognize this in its Memorandum in Opposition when it
states that "[w]hat matters for purposes of the Third-Party Complaint is whether . . . FedEx
Ground has a basis for a claim against [Third-Party Defendants], based on Plaintiffs' allegations."
Def.'s Opp. at 5-6 (emphasis added).

claims against Defendant.  Additionally, the indemnity provision regarding liabilities incurred for

or on account of Third Party Defendant's failure to comply with any laws, rules, etc. is equally

inapplicable to Plaintiffs' claims against Defendant.  This provision, like the others, applies to

claims based on conduct by the Third Party Defendants which is not at issue in Plaintiffs' claims.

B.  Breach of Contract - Employment

In this claim, Defendant alleges that Third-Party Defendants "undertook contractual

obligations to bear all expenses associated with employment of their employees and to treat all of

their personnel as their own employees for all purposes."  Am. Third-Party Compl. at ¶ 21; see

also id. at ¶ 5.  Third-Party Defendants undertook additional contractual obligations to bear sole

responsibility for complying with applicable laws regarding Plaintiffs' payroll deductions.  Id. at

¶ 22; see also id. at ¶ 5.

These contract provisions appear in the "Vehicle Operations" section of the Operating

Agreements governing the employment of "qualified persons."  Ex. A to Harris Decl. at 17

(§2.2(b), (c)); Ex. B to Harris Decl. at 13 (§2.2(b), (c)); Ex. C to Harris Decl. at 17 (§2.2(b), (c)).

Third-Party Defendants argue that these contractual provisions do not apply to Plaintiffs' claims

for the same reason as the indemnity provisions do not apply to Plaintiffs' claims.  They contend

that Plaintiffs' claims do not concern any employment relationships involving the Third-Party

Defendants.  The claims address only Plaintiffs' relationship with Defendant and are not

"associated with" Third-Party Defendants.  The claims do not involve any "expenses" attributable

to Third-Party Defendants.  Additionally, Third-Party Defendants argue, the contractual

provision requiring the contractor to "[a]ssume sole responsibility for compliance with all

applicable laws, rules, regulations and orders respecting payroll deductions and maintenance of

payroll and employment records[,]" does not apply to Plaintiffs' claims because their claims relate to Defendant's failure to comply with Oregon wage laws, not to any failure by Third-Party Defendants and not to any employment relationships involving Third-Party Defendants.

Defendant argues that these Operating Agreement provisions support its claim as to the contractual obligations relating to the Third-Party Defendants' employment of Plaintiffs. Both of the employment-related provisions address the relationship between Third-Party Defendants and their own employees. The first states this expressly by referring to the obligation to "[b]ear all expenses associated with the employment of such persons, . . . " with "such persons" referring to the contractor's employees. The second provision addresses the Third-Party Defendant's assumption of responsibility for complying with various laws regarding payroll deductions and payroll and employment records. While the second provision does not mention "employees" expressly, it is clear from the context that this provision applies to Third-Party Defendants' obligations vis-a-vis their own employees.

Defendant argues that Plaintiffs seek recovery for illegal deductions from payroll from Defendant but under the Operating Agreements, those deductions could have been taken only by Third-Party Defendants. Thus, Defendant contends, a victory for Plaintiffs establishes that Third-Party Defendants breached their contractual obligations.

Unlike the contractual indemnity/hold harmless provisions which expressly refer to other, independent liabilities and claims, the contractual employment provisions do not contain such language and therefore do not on their face refer to a preexisting claim or liability. Defendant does not plead this claim as an indemnification claim but instead as a claim based on the breach of contractual employment provisions. However, at least one court has, in a similar case,

16 - OPINION & ORDER

rejected a defendant's "attempt to characterize [its] claim as a request for breach of contract damages rather than an action for indemnification[.]" Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001). There, the plaintiff, a chauffeur, brought claims against the defendant for violating various employment-related laws, including overtime violations under the federal Fair Labor Standards Act (FLSA), by intentionally misclassifying him as an independent contractor rather than an employee. The defendant had required the plaintiff to form his own corporation, which was required to carry workers' compensation, unemployment compensation, and other liability insurance. Id. at 317. The defendant then contracted with the plaintiff's company for chauffeur services. Id. Although the court rejected some of the plaintiff's claims, it concluded that the plaintiff was the defendant's employee for purposes of the FLSA. Id. at 326.

In third-party claims brought against the plaintiff's company, the defendant sought indemnification from the plaintiff's company for any damages awarded to the plaintiff. Id. at 327. The defendant, in an attempt to distinguish this claim from precedent holding that a company in violation of the FLSA has no right to indemnification, argued that its request for indemnification was one for damages for breach of contract by a third party. Id. It noted that under the contract between the defendant and the plaintiff's corporation, the plaintiff's corporation was required to comply with any applicable federal and state laws. The defendant argued that any overtime wage liability it had to plaintiff was because of the plaintiff's company's breach of its contractual obligation to comply with that law. Id. at 327-28.

The court rejected this "characterization" of the claim, stating that "[w]hether or not [the plaintiff's company] breached a contractual obligation, defendants' attempt to recover damages from [the plaintiff's company] for overtime violations is an attempt to receive indemnification for

FLSA liability." Id. at 328.  As such, the defendant could not escape the application of prior

cases holding that there is no right to indemnification for employers under the FLSA.  Id. (further

explaining that allowing the defendant to obtain indemnification from the plaintiff's company

contradicted the policies of the FLSA).

Defendant's second third-party claim here is indistinguishable from the breach of contract

claim at issue in Gustafson.  As such, regardless of the appellation given the claim by Defendant,

I view it as an attempt by Defendant to obtain indemnification for its alleged state wage law

liability.  As a result, the previous discussion regarding Defendant's first third-party claim

expressly denoted as an indemnity claim, applies with equal force here.  Accordingly, the

contractual provisions at issue in Defendant's second claim against Third-Party Defendants do

not apply to Plaintiffs' claims.

Alternatively, third-party claims require a relationship between the third-party claim and

the claim brought by the plaintiff.  Federal Rule of Civil Procedure 14(a) provides that a

"defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who

is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a).  Under this

provision, the third-party claim is appropriate only when liability is "dependent on the outcome

of the main claim and is secondary or derivative thereto."  Stewart v. Am. Int'l Oil & Gas Co.,

845 F.2d 196, 199 (9th Cir. 1988) (citing United States v. One 1977 Mercedes Benz, 708 F.2d

444, 452 (9th Cir. 1983)).  The third-party claim cannot simply be "'independent or related" but

"'must be based upon plaintiff's claim against defendant.'" Id. (quoting 6 Charles Alan Wright &

Arthur R. Miller, Federal Practices & Procedure § 1446 at 257 (1971)).  The "'crucial

characteristic'" of the third-party claim is that "'defendant is attempting to transfer to the third-

party defendant the liability asserted against him by the original plaintiff.'" Id. (quoting 6 Fed.

Prac. & Proc., § 1446 at 257).

The third-party claim based on the employment-based contractual language in the

Operating Agreements is not derivative of Plaintiffs' claims because it relies on facts asserted by

Defendant that are contrary to Plaintiffs' allegations. The liability asserted against Defendant by

Plaintiffs is based on the recognition that as a matter of law, Plaintiffs were employees of

Defendant's, despite agreements expressly declaring them to be independent contractors and

despite agreements expressly declaring that anyone working with an independent contractor to

assist him or her in performing the obligations under the Operating Agreements is also not

employed by Defendant. The basis for Defendant's third-party claim is the viability of the

Operating Agreements. But, Plaintiffs' allegations and claims undercut those Operating

Agreements. If Plaintiffs are employees of Defendant's, as they allege and as must be assumed to

be true (and has already been determined to be the case in Slayman/Leighter for what appear to

be almost identically situated drivers), then the independent contractor agreements which provide

the basis of Defendant's third-party claims, are invalid. See Def.'s Opp. at 11 (noting that if

Plaintiffs are determined to be employees of Defendant's as Plaintiffs allege and they prevail on

their wage claims against Defendant, the provisions of the Operating Agreements Defendant

relies on would be unenforceable). Defendant's liability to Plaintiffs would not be "transferred"

to the Third-Party Defendants by Defendant's third-party claim because once Defendant's liability

to Plaintiffs is established, it ends there. Defendant cannot attempt to transfer its liability to

Plaintiff via the third-party claim because the third-party claim requires an independent liability

which is contrary to Plaintiffs' claims.

19 - OPINION & ORDER

I agree with Plaintiff that neither of the third-party claims based on the provisions in the Operating Agreements state a viable third-party claim.

## II.  Indemnification for Defendant's Own Conduct

Judge Brown dismissed the indemnity claim in Phelps for a separate reason.  2008 WL 4911909, at *2.  Relying on a 1965 Oregon case, she found that the alleged misconduct of the defendant was based solely on the action of the defendant and thus, the defendant could not seek indemnity.  Id. (citing Waterway Terminals v. P.S. Lord, 242 Or. 1, 406 P.2d 556 (1965)).  In Waterway Terminals, the court explained that "in this state," there is a "presumption . . . against an intention to contract for immunity from the consequences of one's own negligence[.]"  Waterway Terminals, 242 Or. at 19, 406 P.2d at 564.  The presumption may be overcome by "unequivocal language" in the contract establishing the intent to indemnify the indemnitee for its own wrongdoing.  Id.; see also Steele v. Mt. Hood Meadows Or., Ltd., 159 Or. App. 272, 276, 974 P.2d 794, 796 (1999) ("when one party seeks to contract away liability for its own negligence in advance of any harm, the intent to do so must be clearly and unequivocally expressed") (internal quotation marks omitted).  In analyzing the contract provision at issue, the court must consider both the "language of the contract and the possibility of a harsh or inequitable result that would fall on one party if the other were immunized from the consequences of its own negligence."  Steele, 159 Or. App. at 276, 974 P.2d at 796 (internal quotation marks omitted).

Third-Party Defendants argue that the contractual provisions alleged by Defendant do not unequivocally apply to claims that might be brought against Defendant for Defendant's own violations of Oregon wage laws.  Additionally, Defendant does not allege that requiring Third-

Party Defendants to indemnify Defendant for its own wage violations would not be harsh or inequitable. Instead, Third-Party Defendants maintain, allowing the third-party claims in this case would be in violation of Oregon public policy by allowing Defendant to shift responsibility for wage violations to third parties. Accordingly, the third-party claims would cause a harsh and inequitable result on Third-Party Defendants.

Defendant responds that it does not seek indemnification from Third-Party Defendants for Defendant's own conduct. It seeks indemnification for Third-Party Defendants' conduct because as Plaintiffs' employers, Third-Party Defendants are responsible for any illegal deductions taken from the wages paid to the Plaintiffs by Third-Party Defendants. Additionally, Defendant argues that the presumption against contracting away liability for one's own conduct is overcome here by the contractual language covering this particular loss, meaning claims arising from Third-Party Defendants' relationship with their employees. Moreover, because Third-Party Defendants affirmatively undertook the obligation of complying with applicable laws regarding payroll deductions, pursuit of the indemnification claim does not improperly shift that responsibility to Defendant.

The problem with Defendants' argument is that regardless of the relationship between the Third-Party Defendants and their employees and any contractual provisions in the Operating Agreements governing those relationships, the conduct at issue in Plaintiffs' claims is Defendant's conduct. The only liabilities and claims Defendant faces are as a result of its own actions. Because no other liabilities and claims are at issue, Defendant seeks indemnification for its own misconduct. Thus, the presumption in Waterway Terminals applies. The contractual language does not unequivocally overcome the presumption because, as previously explained, it

21 - OPINION & ORDER

governs claims and liabilities arising from the employment relationship between Third-Party Defendants and their employees and does not apply to claims, such as those asserted by Plaintiffs here, that arise from the employment relationship between Plaintiffs and Defendant. As in Phelps, Waterway Terminals requires dismissal of the indemnity claim. And, because Defendant's second breach of contract claim regarding employment-related obligations is, under Gustafson, properly understood as seeking indemnity, Waterway Terminals requires dismissal of that claim as well.

III. Unjust Enrichment Claim

In support of its unjust enrichment third-party claim, Defendant alleges that Third-Party Defendants enjoyed "benefits" by contracting with Defendant and being treated by Defendant as independent contractors. Am. Third-Party Compl. at ¶ 26. Defendant alleges that Third-Party Defendants were aware of the benefits conferred. Id. at ¶ 27. Then, Defendant asserts that if Plaintiffs are adjudged to have been employees of Defendant and if employee compensation is awarded to Plaintiffs, "Third-Party Defendants would unjustly retain the extra benefits conferred by FedEx Ground without incurring the costs of employee compensation due to their employees." Id. at ¶ 28. Further, Defendant contends, "Third-Party Defendants would avoid losses arising from their failure to comply with laws governing Plaintiffs' employment, by shifting the costs of their wrongdoing onto FedEx Ground." Id. "Accordingly," Defendant asserts, "Third-Party Defendants should be ordered to pay to FedEx Ground the amount of the extra benefits conferred." Id. at ¶ 29.

The "benefits" that Third-Party Defendants enjoyed by contracting with Defendant refer to those asserted in Paragraph 11 of the Amended Third-Party Complaint, including, "the right to

22 - OPINION & ORDER

enter a business relationship with FedEx Ground, the flexibility of independent business ownership, and a contract price negotiated in reliance on the allocation of risk and responsibility set forth in the Operating Agreement." Id. at ¶ 11.  Defendant alleges that Third-Party Defendants also received tax benefits, such as deductions for home offices, depreciation of vehicles and routes, and other business expenses that are unavailable to employees.  Id.

To state a claim for unjust enrichment, a party must allege "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." Commerce & Indus. Ins. Co. v. HR Staffing, No. 03:14-cv-00559–HZ, 2014 WL 4983671, at *3 (D. Or. Oct. 1, 2014) (internal quotation marks omitted).  Third-Party Defendants initially argued that the unjust enrichment third-party claim failed to state a claim because there were no allegations of what "benefits" were allegedly received, no allegations of how Third-Party Defendants were made aware of the benefits, and no allegations of what injustice would result from not requiring Third-Party Defendants to compensate Defendant.  In light of the Amended Third-Party Complaint, this argument is largely moot.

While Third-Party Defendants initially raised other arguments as well, their Reply Memorandum focuses on two.  First, they argue that the claim fails as a matter of law because Defendant does not allege that Third-Party Defendants must repay Defendant for the same benefits allegedly received by Third-Party Defendants.  Instead, Defendant alleges that Third-Party Defendants must repay Defendant for any unlawful wage deductions and penalties that Defendant may be required to pay as a result of Defendant's own misconduct.  "In other words," Third-Party Defendants continue, "FedEx's unjust enrichment fails because it is not an unjust

23 - OPINION & ORDER

enrichment claim at all; it is, just like FedEx's other third party claims, a claim for indemnity." Third-Party Defs.' Reply at 10.  Second, Third-Party Defendants argue that Defendant cannot plausibly allege injustice because Oregon public policy precludes the shifting of responsibility for wage violations to third parties and any finding of liability and resulting judgment would be based on Defendant's own conduct.

I agree with Third-Party Defendants.  Defendant alleges that if Plaintiffs prevail in their claims, Third-Party Defendants would "unjustly retain the extra benefits" conferred on them by Defendant under their Operating Agreements without incurring the costs of employee compensation due to their employees, and to avoid this injustice, Third-Party Defendants must pay Defendant "the amount of the extra benefits conferred."  Am. Third-Party Compl. at ¶¶ 28, 29.  As indicated above, the "benefits" allegedly conferred by the agreements concern items such as tax benefits and a particular contract price.  Id. at ¶ 11.  But, the alleged "injustice" here is triggered by a determination that Defendant owes Plaintiffs compensation for unlawful deductions and related penalties.  And, the "amount of extra benefits conferred" Defendant alleges Third-Party Defendants must pay to Defendant appears to be the damages Defendant will be ordered to pay to Plaintiffs if Plaintiffs prevail, not the amount of the tax benefits or the value of the "flexibility of independent business ownership[.]"  See id. at ¶ 28 (alleging that an award of compensation to Plaintiffs means that Third-Party Defendants avoided their obligation to pay the compensation due to their employees); id. at ¶ 15 (alleging that if Plaintiffs are employees of Defendant, it would be "unjust" for Defendant to pay for the benefits obtained by Third-Party Defendants who should have expected to pay for the wage penalties).

Despite Defendant's attempt to plead the claim as an unjust enrichment claim, the

allegations amount to an indemnification claim for the damages Defendant may owe to Plaintiffs. Understood as such, and for the reasons previously explained, the unjust enrichment claim cannot survive. Additionally, as noted above, the unjust enrichment claim, as with the other two claims, is not dependent on Plaintiffs' claims and Defendant does not seek to transfer the liability asserted against it by Plaintiffs to Third-Party Defendants. Thus, it is not a viable third-party claim under Rule 14(a). The liability established by Plaintiffs' claims is based on wage violations. The third-party claims address alleged unjust or inequitable enrichment based on separate and independent contractual expectations and violations.

Alternatively, for the reasons discussed below, I agree with Third-Party Defendants that based on the allegations in the Third-Party Complaint, the third-party claims are contrary to the public policy of Oregon and thus, Defendant cannot, as a matter of law, establish the requisite injustice to support the unjust enrichment claim.

IV. Public Policy

Third-Party Defendants argue that all of Defendant's third-party claims must be dismissed because they attempt to shield Defendant from the application of Oregon wage laws, contrary to the public policy of the State of Oregon. As noted in Gustafson, which addressed a federal wage claim, allowing indemnification in such situations permits employers to contract away their wage-related obligations. 171 F. Supp. 2d at 328. Oregon cases have reached similar conclusions although sometimes in different contexts. Sch. Dist. No. 1, Multnomah Cnty. v. Teachers' Ret. Fund Ass'n, 163 Or. 103, 110, 95 P.2d 720, 723 (1939) (contractual waiver of statutory entitlement to disability benefits held invalid; waiver was "inimical to the public policy of the state" as expressed in the statute); Turney v. J.H. Tillman Co., 112 Or. 122, 132, 228 P.

25 - OPINION & ORDER

933, 132 (1924) (in case discussing wages paid for work on state construction project, court

noted the "general rule" that "[u]sually a person may waive by agreement the benefit of a

statutory provision[,]" but noted an exception for statutory provisions "whose waiver would

violate public policy expressed therein, or where rights of third parties which the statute was

intended to protect are involved."); Young v. Mobil Oil Corp., 85 Or. App. 64, 72-73, 735 P.2d

654, 659 (1987) (indemnity provision in foreign contract held invalid because indemnity would

subvert public policy as expressed in the exclusive liability provision of the Workers'

Compensation Law); McKinney v. Employment Division, 21 Or. App. 730, 737, 537 P.2d 126,

130 (1975) ("Where legislation is intended to secure general objectives of public policy as well

as to protect the interests of individuals, it may not be circumvented by private agreement.").

Oregon law expressly provides:

> An employer may not by special contract or any other means exempt the employer
> from any provision of or liability or penalty imposed by . . . any statute relating to
> the payment of wages, except insofar as the Commissioner of the Bureau of Labor
> and Industries in writing approves a special contract or other arrangement between
> an employer and one or more of such employer's employees.

O.R.S. 652.360(1)

In a similar case, the Oregon Supreme Court considered the wage-related claims of the

truck driver plaintiff who signed an employment agreement with a company which was a wholly-

owned subsidiary of the defendant.  Taylor v. Werner Enters., Inc., 329 Or. 461, 988 P.2d 384

(1999).  Despite that employment agreement with the subsidiary, the court concluded that the

defendant, not the subsidiary, was the employer given various factors such as serving under the

direction and control of the defendant.  Id. at 468, 988 P.2d at 388.  The court rejected the

defendant's argument that the employment agreement between the plaintiff and the subsidiary

controlled the relationship.  Id. at 468, 988 P.2d at 388-89.  It made clear that under O.R.S.

652.360, such agreements "cannot exempt [the defendant employer] from liability or any penalty

imposed by [the defendant employer's] violations of [Oregon wage statutes]."  Id. at 468, 988

P.2d at 389.

      While many of these cases have addressed the validity of agreements which contravene

wage and similar statutes, Gustafson and other cases have applied the governing principle to

dismiss indemnity claims.  E.g., Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.,

99 F. Supp. 2d 219, 221 (D. Conn. 2000) (court dismissed employer counterclaim based on

indemnity provision in collective bargaining agreement in overtime wage case because "a

holding that the indemnification clause is enforceable would indeed mean that employers would

have little reason to be concerned over whether labor agreements comply with the statutorily

mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they

are later found to have violated such requirements, such employers would be totally compensated

for any injuries resulting from such action[.]"); Thurmond v. Drive Auto. Indus. of Am., Inc., 974

F. Supp. 2d 900, 908 (D.S.C. 2013) (dismissing employer's third-party contractual indemnity

claim against staffing agency in Title VII discrimination case because Title VII's goal of

eradicating discriminatory conduct "would be thwarted if [a party] were permitted to contract

around its obligations and shift its entire responsibility for complying with Title VII") (internal

quotation marks omitted).

      Defendant's third-party claims violate O.R.S. 652.360 and the public policy of Oregon.

Assuming Plaintiffs are Defendant's employees as Plaintiffs allege, Defendant cannot avoid its

liability for unlawful deductions and associated penalties by relying on its contracts with Third-

27 - OPINION & ORDER

Party Defendants.  Allowing Defendant to assert indemnification and indemnification-type claims against the Third-Party Defendants based on those contracts contravenes the law in O.R.S. 652.360 and the public policies it enforces.

Defendant argues that O.R.S. 652.360 does not apply because it, and the public policy argument based on it, presupposes that Defendant is Plaintiffs' employer.  Because the third-party claims deny that Defendant was Plaintiffs' employer and assert that Third-Party Defendants were Plaintiffs' employer, Defendants contend that its third-party claims do not violate public policy.  I disagree.  Two of Defendant's third-party claims are expressly conditioned on a finding that Plaintiffs were Defendant's employees.  Am. Third Party Compl. at ¶¶ 23, 24, 28, 29.  The other claim implies the same condition.  Once that condition is satisfied, the claims are not viable.

CONCLUSION

Third-Party Defendants' motion to dismiss the third-party claims [24] is granted.  Because the claims are not susceptible to re-pleading, they are dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____ 8 day of _____ May _____, 2015

_____
Marco A. Hernandez
United States District Judge