IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EDWARD SLAYMAN, DENNIS McHENRY and JEREMY BRINKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>Defendant. | Case No. 3:05-cv-01127-HZ |
| JON LEIGHTER and DAVID SPICER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., and FEDEX GROUND PACKAGE SYSTEM, INC. d/b/a FEDEX HOME DELIVERY, INC.,<br><br>Defendants. | Case No. 3:07-cv-0818-HZ |
| TIMOTHY BERG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>Defendant. | Case No. 3:14-cv-01663-HZ |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (with the exhibits attached hereto, collectively referred to herein as this or the "Agreement" or "Settlement Agreement") is made and entered into as of this 26th day of February, 2016, between Edward Slayman, Dennis McHenry, Jeremy Brinker, Jon Leighter, David Spicer, and Timothy Berg (collectively, the "Plaintiffs"), on behalf of themselves and the Class, as defined below, and Defendant FedEx Ground Package System, Inc. ("FXG") (collectively, the "Parties"), to settle, fully and finally, all of the Released Claims (as defined below). This Agreement is made in consideration of the following facts:

A.    Certain disputes and differences have arisen between the Parties concerning FXG's classification of Class Members as independent contractors instead of employees. Plaintiffs allege that, based upon this employment classification, they and the members of the Class were, among other things, unlawfully deprived of the benefits of the Oregon labor and employment laws and were not paid all wages due.

B.    There are currently three related cases pending in this district before the Court: *Slayman v. FedEx Ground Package Sys., Inc.*, 3:05-cv-01127-HZ ("*Slayman*"), filed July 20, 2005; *Leighter v. FedEx Ground Package Sys., Inc.*, 3:07-cv-00818-HZ ("*Leighter*"), filed June 1, 2007; and *Berg v. FedEx Ground Package Sys., Inc.*, 3:14-cv-01663-HZ "(*Berg*"), filed October 20, 2014. Collectively, *Slayman*, *Leighter*, and *Berg*, will be referred to herein as the Litigation.

C.    After each of the complaints in *Slayman* and *Leighter* was filed, the cases were transferred to the Northern District of Indiana as part of multi-district litigation proceedings under the caption *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 3:05-md-00527 (the "MDL Proceeding"). The Third Amended Complaint in *Slayman* alleged the following causes of action: (1) illegal deductions from wages under ORS 652.610; (2) fraud; (3) rescission of the Operating Agreement; and (4) declaratory relief. The Complaint in *Leighter* alleged the following causes of action: (1) illegal deductions from wages under ORS 652.610; (2) rescission; (3) declaratory relief; (4) injunctive relief; (5) failure to pay overtime in violation of ORS 653.261; and (6) penalty wages under ORS 652.140. In the MDL proceeding, the district court certified classes for the claims under ORS chapters 652 and 653 in *Slayman* and *Leighter*. Plaintiffs then moved for summary judgment on employment status. In an opinion issued on December 13, 2010, the MDL district court denied the motions, but *sua sponte* granted summary judgment to FXG on the certified claims. Following remand to the district court in Oregon, the parties cross-moved for summary judgment on the Plaintiffs' rescission claims in both cases. The district court granted FXG's motion and denied plaintiffs' motion as moot. Final judgments were entered in both cases on May 25, 2012, and plaintiffs appealed.

D.    On August 27, 2014, the U.S. Court of Appeals for the Ninth Circuit reversed the MDL court's summary judgment decision, and issued an opinion finding that the members of the *Slayman* and *Leighter* classes were employees as a matter of Oregon law, and ordered that the cases be remanded with instructions to the trial court to enter summary judgment in favor of the class on the question of employment status. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033 (9th Cir. 2014).

E.      On October 20, 2014, the first complaint in *Berg* was filed. The Second Amended Complaint, filed on February 17, 2016, alleged the following claims: (1) illegal deductions from wages under ORS 652.615; (2) penalty wages under ORS 652.140 and 652.150; and (3) failure to pay overtime in violation of ORS 653.261.

F.      The Parties, through counsel and with the assistance of a mediator, have engaged in arm's-length settlement negotiations. All Parties in the Litigation have agreed to settle the Litigation.

G.      The Parties understand, acknowledge, and agree that this Agreement constitutes the compromise of all the disputed claims at issue in the Litigation and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Litigation and of the Released Claims of the Plaintiffs and Class Members, including all costs and attorneys' fees incurred.

H.      Plaintiffs and Class Counsel: (1) have examined and considered the benefits to be provided to Class Members under the settlement provided for in this Agreement (the "Settlement"); (2) have considered the laws of Oregon and the claims that have been and could be asserted relating to the classification of Class Members as independent contractors; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of the Class, taking into account the benefits provided to Class Members through the terms of the Settlement, the decisions rendered in the Litigation, the risks of litigation, and the length of time that would be required to complete the Litigation and any appeals.

I.      The Parties further acknowledge that this Settlement is a compromise of disputed claims and that FXG is not in any way admitting liability by entering into this Settlement. FXG has at all times disputed, and continues to dispute, the allegations in the Litigation, denies that it has committed any violation of law, misconduct, wrongdoing, or any other actionable conduct, denies that it misclassified Plaintiffs and the Class Members, and denies any liability for any of the claims that have or could have been raised in the Litigation regarding the classification of the Plaintiffs and Class Members as independent contractors, but believes that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

J.      The Parties believe that the Settlement is fair, reasonable and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors, and will materially benefit Class Members. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Litigation through trial and any appeal. Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Litigation.

Therefore, in consideration of the promises and agreements contained herein, the Parties agree and covenant as follows:

## I.    DEFINITIONS

As used in this Agreement, the following definitions (in addition to those set forth elsewhere herein) shall apply:

A.    "Administration Expenses" means reasonable fees and expenses incurred by the Settlement Administrator for: (1) preparation and mailing of the Settlement Notice and Forms, follow-up mailings, and reminder mailings; (2) preparation and mailing of the notice required by the Class Action Fairness Act, 28 U.S.C. §1715; (3) establishment of a website to provide notice to Class Members regarding the Settlement and for other purposes set forth herein; (4) receipt and evaluation of exclusion requests from *Berg* Class Members; (5) receipt and evaluation of Forms submitted by Class Members for payment under this Settlement; (6) processing objections to the Settlement; (7) establishment and maintenance of the Class Settlement Fund, which is intended to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, as described in Section III.A below; (8) preparing and filing federal income tax returns for the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law; (9) paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund; (10) preparing, filing, and issuing all necessary tax reporting forms for the Class Settlement Fund, including IRS Forms 1099 and/or W-2 regarding the distribution of payments to Class Members, Class Counsel, and Plaintiffs; (11) providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 or W-2 issued to Class Members, Class Counsel, and Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the Claimants and the applicable taxing authorities; (12) mailing of settlement payments to Eligible Class Members who timely submit Valid Claims; (13) mailing, or transfer by wire, of payment(s) for attorneys' fees and costs to Class Counsel; (14) mailing of service awards to Plaintiffs; and (15) performance of any other actions specified in this Agreement or mutually requested by the Parties in writing.

B.    "Claim Form" means the proposed form attached hereto as **Exhibit E**, to be approved by the Court and submitted, in accordance with Section III of this Agreement, to the Settlement Administrator by Class Members who wish to receive a payment pursuant to the Settlement.

C.    "Class" is used collectively to refer to the Litigation's currently certified classes and subclasses in *Slayman* and *Leighter*, as well an additional class and subclasses in *Berg*. The certified class in *Slayman* is defined as:

All persons who: 1) entered into an FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from July 20, 1999 through October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

The certified class and subclasses in *Leighter* are defined as:

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from July 20, 1999 through July 27, 2009 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) who, at any time from August 10, 2005 through July 27, 2009 operated vehicles with a gross vehicle weight rating of less than 10,001 pounds.

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) whose Operating Agreement was terminated at any time from July 20, 1999 through July 27, 2009.

The Parties have agreed to the following settlement class and subclasses definitions in *Berg*:

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from July 27, 2009 through September 18, 2015, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of Oregon.

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) who, at any time from July 27, 2009 through September 18, 2015, operated vehicles with a gross vehicle weight rating of less than 10,001 pounds.

> All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149- RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly

excused employment absences) to provide package pick-up and delivery services pursuant to the Operating Agreement; 3) were dispatched out of a terminal in the state of Oregon; and 4) whose Operating Agreement was terminated at any time from July 27, 2009 through September 18, 2015.

For the purpose of these class definitions, and for purposes of this Settlement Agreement only, "persons" shall be defined to include both individuals who contracted in their own name and individuals who were the authorized officer or owner of any business entity (whether partnership, limited liability company, sole proprietorship, corporation, or other business structure) who were signatories to Operating Agreements with FXG. It shall also include individuals or business entities (of whatever type and whenever formed) which entered into, or assumed an assignment of, an FXG Operating Agreement, where the authorized officer or owner of the business entity is or was a Class Member.

D.    "Class Member" means any individual or business entity identified in Section I.C above, and/or any signatory to an FXG Operating Agreement whom the Parties otherwise agree shall be considered a member of the Class. A preliminary list of the Class Members is attached hereto as **Exhibit A**. Notwithstanding the attached list, nothing shall prevent the Parties, through their counsel, from mutually agreeing to subsequently modify the list of Class Members to correct errors or omissions therein. "*Slayman* and *Leighter* Class Member" shall refer to a Class Member who is a member of the classes and/or subclasses in *Slayman* and/or *Leighter*. "*Berg* Class Member" shall refer to a Class Member who is a member of the class and/or subclasses in *Berg*. "Class Member" shall not include any person who timely opted out of both the *Slayman* and *Leighter* classes and subclasses. "Class Member" also shall not include any person who is not a *Slayman* and *Leighter* Class Member and timely submits a Request for Exclusion from the *Berg* class and subclasses.

E.    "Class Counsel" means Steve D. Larson and Mark A. Friel of Stoll Stoll Berne Lokting & Shlachter PC.

F.    "Class Settlement Fund" means the fund that will be established and maintained to resolve claims at issue, as described in Section III.A below, and which is intended to be a qualified settlement fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B.1.

G.    "Court" means the United States District Court for the District of Oregon.

H.    "Effective Date" means the first business day after the following has occurred: (i) 45 days have lapsed from the entry by the Court of the Final Approval Order and the Judgment thereon, and no notice of appeal of the Judgment or any Order in the Litigation has been filed, the time provided for in Rule 4 of the Federal Rules of Appellate Procedure to take any such appeal has expired, and any right to take any such appeal from the Judgment or from any such Order has been waived or otherwise lost; or (ii) if an appeal has been taken, each such appeal has been finally adjudicated and the Final Approval Order and Judgment have been upheld in all respects by each such final adjudication, and either the time for initiation of the next step in the appellate process (*e.g.*, a petition for writ of certiorari) has expired without any action by

appellant(s) or the next step in the appellate process was invoked and has been concluded without any impact on the Final Approval Order or Judgment.

I.        "Eligible Class Member" means each Class Member who timely and properly completes in full, signs under penalty of perjury, and submits, the Forms in accordance with the requirements of the Preliminary Approval Order.

J.        "Final Approval Hearing" means the final hearing, to be held after notice has been provided to the Class Members in accordance with Section IV of this Agreement, to determine whether to grant final approval to the Settlement and enter the Final Approval Order and the Judgment.

K.        "Final Approval Order" means the proposed order granting final approval to the Settlement, to be entered by the Court with the terms and substantially in the form of **Exhibit H** to this Agreement.

L.        "Final Claims Date" means the date that the Preliminary Approval Order establishes as the date on or before which, to meet the timing requirement for a claim to qualify as a Valid Claim, all Forms must be either: (1) placed in the United States Mail with first-class postage, addressed to the Settlement Administrator, and post marked by the United States Postal Service; or (2) uploaded to the Settlement Website in accordance with the instructions provided on the website.

M.        "Forms" means, collectively, Form W-9 and the Claim Form to be included with the Settlement Notice.

N.        "Form W-9" means the Internal Revenue Service's Form W-9 (Request for Taxpayer Identification Number and Certification), which will be included with the Settlement Notice.

O.        "Judgment" means the final judgment to be entered by the Court with the terms and substantially in the form of **Exhibit I** to this Agreement.

P.        "Settlement Notice" means, individually or collectively as the context may indicate, the written notices to be approved by the Court and mailed to Class Members in accordance with Section IV of this Agreement, the Detailed Notices attached hereto as **Exhibits B-2** ("*Slayman* and *Leighter* Detailed Notice") and **Exhibit C-2** ("*Berg* Detailed Notice"), and/or the proposed Summary Notice attached hereto as **Exhibit D**. "*Slayman* and *Leighter* Settlement Notice" means the proposed written notice attached hereto as **Exhibit B-1**, that is mailed to *Slayman* and *Leighter* Class Members. "*Berg* Class and Settlement Notice" means the proposed Settlement Notice, attached hereto as **Exhibit C-1**, that is mailed to *Berg* Class Members.

Q.        "Preliminary Approval Order" means the proposed Order Preliminarily Approving Class Action Settlement, Certifying *Berg* Settlement Class and Subclasses, Approving Notice Procedures, and Setting Final Approval Hearing, to be entered by the Court with the terms and in the form of **Exhibit G** to this Agreement.

R.     "Released Claims," as to Plaintiffs and all Class Members, means all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which (i) are owned or held by Plaintiffs (in their individual and/or representative capacities) or Class Members and/or their affiliated business entities (if any, including any predecessors in interest and past, present and future officers), or any of them, as against Releasees, or any of them; and (ii) arise under or are in any way related to the alleged misclassification of workers, the alleged non-payment of wages or any claim associated with any Oregon wage statute (including ORS chapters 652 and 653) and associated regulations, alleged claim of fraud, or alleged claim for rescission of contract, or that is alleged or could have been alleged in the Litigation or to any act, omission, damage, matter, cause, or event whatsoever arising out of the initiation, defense, or settlement of the Litigation or the claims or defenses asserted in the Litigation for any time prior to September 19, 2015, except for the enforcement of this Settlement Agreement.

The Released Claims include any known or unknown claims for damages or injunctive relief relating to claims described herein. Specifically, Plaintiffs and all Class Members in exchange for the valuable consideration offered herein, on their own behalf, and on behalf of any corporation, limited liability company, sole proprietorship, and any other business entity with which they have an ownership interest, hereby expressly waive any and all rights and benefits conferred upon them by Section 1542 of the California Civil Code and expressly consent that this Agreement (including, without limitation, the Release set forth herein) shall be given full force and effect according to each and all of its express terms and provisions, including those related to unknown and unsuspected claims, if any, as well as those relating to any other claims hereinabove specified. Section 1542 provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

S.     "Releasees" means:  (a) FXG, and its consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees; and (b) FXG's past, present, and future shareholders, officers, directors, agents, insurers, attorneys, and employees.

T.     "Settlement Administrator" means a qualified firm selected by the Parties and approved by the Court to administer the Settlement and the Class Settlement Fund as described in Section III.

U.     "Valid Claim" refers to Forms that: (i) are timely submitted by a Class Member in accordance with the requirements of the Preliminary Approval Order; (ii) are signed under penalty of perjury by that Class Member; and (iii) contain all of the information required for that Class Member to be an Eligible Class Member. Class Members who timely submit Forms that are deficient in one or more respects will receive a deficiency notice from the Settlement Administrator and will have 30 days after the mailing of the deficiency notice in which to cure

the deficiency. If a Class Member fails to cure the deficiency within that time, the Settlement Administrator shall deem the deficient claim to be an invalid claim.

## II.    REQUIRED EVENTS

The events set forth in this Section II, in addition to the occurrence of the "Effective Date" as described in Section I.H, are conditions precedent to this Agreement becoming effective.

As soon as practicable after the execution of this Agreement by all Plaintiffs and FXG, the Plaintiffs shall file this Agreement and a motion seeking entry of the Preliminary Approval Order, substantially in the form of **Exhibit G** hereto, which by its terms shall accomplish all of the following:

1.    Preliminarily approve this Settlement as fair, reasonable, and adequate to the Class Members;

2.    Designate Rust Consulting, Inc. as the Settlement Administrator, and approve it to perform the following functions in accordance with the terms of this Agreement, the Preliminary Approval Order, and the Final Approval Order:

a.    Provide for the Settlement Notice (with the Final Approval Hearing date) and the Forms, in a form substantially the same as the documents attached hereto as **Exhibit B-1**, **Exhibit C-1**, and **Exhibit E**, to be sent by mail to all Class Members that can be identified through a reasonable effort;

b.    Direct a Summary Notice, substantially in the form attached hereto as **Exhibit D**, to be published once in *The Oregonian*;

c.    Provide for the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715, substantially in the form attached hereto as **Exhibit F**, to be mailed in accordance with the provisions of CAFA to the appropriate federal and state officials;

d.    Establish a website (the "Settlement Website") for the purpose of: (i) providing information to Class Members regarding the Settlement; (ii) allowing Class Members to download relevant documents, including the complaints in the Litigation, this Agreement, the Settlement Notice (including the Detailed Notices, substantially in the form attached hereto as **Exhibit B-2** and **Exhibit C-2**), the Forms, the Preliminary Approval Order, and the motions filed by Class Counsel for attorney's fees, costs, and service awards, and for Final Approval; (iii) allowing the uploading of completed Forms; and (iv) providing a toll-free number for Class Members to call with questions;

e.    Mail, by first-class United States Mail, to every Class Member from whom it has not received the Forms, a postcard reminder stating that

it has not received Forms from that Class Member and reminding the Class Member of the need, if they wish to be eligible to receive a payment under the Settlement, to either mail the Forms to the Settlement Administrator, or upload the Forms to the Settlement Website, on or before the deadline stated in the Settlement Notice;

f.      Receive and process any written requests for exclusion ("opt outs") from *Berg* Class Members ("Requests for Exclusion") in accordance with Section VI of this Agreement;

g.      Receive, evaluate, and either approve as meeting the requirements of Section III.C of this Agreement or disapprove as failing to meet those requirements, the Forms submitted by Class Members seeking to receive a payment under this Settlement, all in accordance with Sections I.U and III of this Agreement;

h.      Provide to FXG and Class Counsel, 14 days after the first mailing of the Settlement Notice and Forms and then updated every 14 days thereafter, (i) a list of the names and addresses of all Class Members who have submitted Forms and whose Forms the Settlement Administrator has determined constitute Valid Claims; (ii) a separate list of the names and addresses of all Class Members who have submitted Forms and whose Forms the Settlement Administrator has determined do not constitute Valid Claims; (iii) a separate list of the names and addresses of all Class Members who have submitted documents indicating that they wish to object to the Settlement; and (iv) a separate list of the names and addresses of all *Berg* Class Members who have submitted Requests for Exclusion;

i.      Send, by first-class United States Mail, to each Class Member who has timely submitted Forms that the Settlement Administrator has determined to be deficient in some respect, a notice of deficiency;

j.      Process objections to the Settlement in accordance with Section VI of this Agreement;

k.      Mail settlement payments to Class Members with Valid Claims, as ordered by the Court in the Final Approval Order, in accordance with Section III of this Agreement;

l.      Mail, or transfer by wire, payment(s) for attorneys' fees and costs to Class Counsel, as ordered by the Court in the Final Approval Order, in accordance with Section VII of this Agreement;

m.      Mail service awards to Plaintiffs as ordered by the Court in the Final Approval Order, in accordance with Section VII of this Agreement;

n.      Establish, designate, and maintain the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and

Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Eligible Class Members;

o.    Maintain the assets of the Class Settlement Fund in a non-interest bearing escrow account segregated from the assets of FXG and any person related to FXG;

p.    Obtain an employer identification number (EIN) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4);

q.    Prepare and file federal income tax returns for the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law;

r.    Cooperate with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date;

s.    Pay and deposit the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund;

t.    Prepare, file, and issue all necessary tax reporting forms for the Class Settlement Fund, including IRS Forms 1099 and W-2 regarding the distribution of payments to the Class Members, Class Counsel, and Plaintiffs;

u.    Provide FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 and W-2s issued to Class Members, Class Counsel, and Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities;

v.    Pay any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund solely from the assets of the Class Settlement Fund without any recourse against FXG for additional monies;

w.    Within 30 days after the payment of all Valid Claims, provide to FXG and Class Counsel a statement of the total number of claims submitted, the total number of claims adjudicated to be Valid Claims, and the total dollar amount paid to each Class Member (the "Final Accounting");

x.    Liquidate any remaining assets of the Class Settlement Fund after all payments to Class Members, Class Counsel, and Plaintiffs have been

made and all tax obligations have been satisfied, and distribute such assets as directed by the Court;

y.      Performing such other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform; and

z.      Petition the Court for termination of the Class Settlement Fund once all of the duties listed above have been completed.

3.      Certify the settlement class and subclasses in *Berg*, appoint Timothy Berg as class representative for the class and subclasses in *Berg*, and appoint Class Counsel as class counsel in *Berg*.

4.      Approve the form, contents, and methods of notice to be given to the Class Members as set forth in Section IV of this Agreement, and direct the Settlement Administrator to provide such notices.

5.      Establish procedures and deadlines for Class Members to submit Requests for Exclusion or object to the Settlement and to submit Forms to the Settlement Administrator, all consistent with Sections III and VI of this Agreement.

6.      Schedule deadlines for the filing and/or submission of (a) Requests for Exclusion (for *Berg* Class Members); (b) objections to the Settlement (for all Class Members), and (c) papers in support of final approval of the Settlement; and

7.      Schedule the Final Approval Hearing for a date which is no sooner than 135 days after the Court enters the Preliminary Approval Order.

At the Final Approval Hearing, the Parties will jointly request the Court to enter the Final Approval Order and the Judgment, substantially in the form of **Exhibit H** and **Exhibit I**, which will: (1) grant final approval to the Settlement and this Agreement as fair, reasonable, and adequate to the Class; (2) provide for the release of all Released Claims and enjoins Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) order the dismissal with prejudice of all Released Claims, and incorporate the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear his or its own costs and attorneys' fees, except as provided in Section VII below with respect to Class Counsel's attorneys' fees and costs; (4) authorize the Settlement Administrator to pay Valid Claims in accordance with the terms of the Agreement; (5) authorize the payment of Class Counsel's attorneys' fees and costs as detailed in Section Vll below; (6) authorize the payment of service awards to each of the Plaintiffs as detailed in Section VII below; and (7) preserve the Court's continuing jurisdiction over the administration of the Settlement and enforcement of the Agreement.

Plaintiffs, Class Counsel, and FXG will cooperate and take all reasonable actions to accomplish the above. If the Court fails to enter the Preliminary Approval Order or the Final Approval Order substantially in the form submitted by the Parties, Plaintiffs, Class Counsel, and FXG will use all reasonable efforts that are consistent with this Agreement to cure any defect

identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Approval Order and Final Approval Order, the Parties will return to their prior positions in the Litigation in accordance with Section XI.A of this Agreement.

## III. PAYMENTS TO ELIGIBLE CLASS MEMBERS, AND PROCEDURES FOR PROVIDING PAYMENTS TO ELIGIBLE CLASS MEMBERS WHOSE CLAIMS ARE DETERMINED TO BE VALID CLAIMS

### A. Payment to Class Settlement Fund

No later than five business days after the Effective Date, and in accordance with the other terms of this Agreement and its exhibits, FXG shall make the following payment to resolve the contested claims of Eligible Class Members: fifteen million four hundred fifty thousand dollars ($15,450,000), plus any additional amount sufficient to pay the Class Settlement Fund's share of employment and payroll taxes due, if any, on any settlement amounts allocated to Eligible Class Members for overtime wage claims (the "Settlement Payment"). The portion of the Class Settlement Fund allocated to payments to Eligible Class Members' overtime wage claims shall not exceed $775,000. FXG shall satisfy its Settlement Payment obligation by causing the requisite funds to be deposited into the Class Settlement Fund. The Parties intend the Class Settlement Fund to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1. Accordingly, FXG shall retain no rights or reversionary interests in the Settlement Payment once transferred to the Class Settlement Fund. Furthermore, FXG's obligation to make the Settlement Payment is contingent on: (1) the Court's entry of the Preliminary Approval Order appointing the Settlement Administrator and approving the Settlement Administrator to establish and maintain the Class Settlement Fund; and (2) the Court's entry of the Final Approval Order releasing and dismissing with prejudice all of the Released Claims. Under no circumstances shall FXG be required to pay more under this Settlement than the amount of the Settlement Payment. The Class Settlement Fund is a common fund that includes Class Counsel's fees and costs as described more fully in Section VII.A of this Agreement, the service award payments to Plaintiffs as described more fully in Section VII.B of this Agreement, and the administrative expenses, costs of notice, and cost of claims administration as described in Section V of this Agreement. The portion of the Class Settlement Fund remaining after payment of any fees, costs, administrative expenses, and service awards as awarded by the Court, shall be referred to herein as the "Net Class Settlement Fund."

### B. Payment Calculation for Class Members

Each Eligible Class Member who timely submits a Valid Claim (a "Claimant") shall receive a payment based on a calculation made by Class Counsel (the "Payment Calculation(s)"). Class Counsel shall make and submit to the Settlement Administrator and FXG their Payment Calculation(s) for each Claimant no later than fifteen (15) business days after entry by the Court of the Final Approval Order. The Payment Calculation(s) shall take into account available information regarding the dates and duration of contracting, hours and weeks of work, vehicles used, and other factors Class Counsel may, in their judgment, deem relevant. Each Eligible Class Member who timely submits a Valid Claim shall receive a payment of no less than $500. Class Counsel assume and accept all responsibility and liability associated with their Payment Calculation(s).

If any Class Member does not timely submit a Valid Claim, or if any *Berg* Class Member timely files a Request for Exclusion, then the amount of the Class Settlement Fund allocable to that Class Member shall be distributed on a *pro rata* basis to the Eligible Class Members who did timely submit a Valid Claim. The *pro rata* distribution will be based on the percentage share in the Net Class Settlement Fund of each Eligible Class Member who did timely submit a Valid Claim. Although Class Members who do not timely submit a Valid Claim are not entitled to receive a settlement payment under this Agreement, they shall still be bound by the other provisions of this Agreement, including without limitation the release of claims in Section VIII.

### C.    Procedures for Evaluation, Approval, and Payment of Valid Claims

The Settlement Administrator shall be responsible for the following functions in accordance with the terms of this Settlement, the Preliminary Approval Order, and the Final Approval Order:

1.    Establishing, designating, and maintaining the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1 for the purpose of resolving the contested claims of Eligible Class Members, and maintaining the assets of the Class Settlement Fund in a non-interest bearing escrow account segregated from the assets of FXG and any person related to FXG;

2.    Mailing, by first-class United States Mail, the Settlement Notice (with the Final Approval Hearing date and deadlines established by the Court in the Preliminary Approval Order) and the Forms to all Class Members that can be identified through a reasonable effort;

3.    Direct the Summary Notice to be published once in *The Oregonian*;

4.    Establishing the Settlement Website for the purpose of: (i) providing information to Class Members regarding the Settlement; (ii) allowing Class Members to download relevant documents, including the complaints in the Litigation, this Agreement, the Settlement Notice (including the Detailed Notices), the Forms, the Preliminary Approval Order, and the motions filed by Class Counsel for attorney's fees, costs, and service awards, and for Final Approval; (iii) allowing the uploading of completed Forms; and (iv) providing a toll-free number for Class Members to call with questions;

5.    Mailing, by first-class United States Mail, to every Class Member from whom it has not received the Forms, a postcard reminder stating that it has not received Forms from that Class Member and reminding the Class Member of the need, if they wish to be eligible to receive a payment under the Settlement, to either mail the Forms to the Settlement Administrator, or upload the Forms to the Settlement Website, on or before the deadline stated in the Settlement Notice;

6.    Notifying the appropriate federal and state officials under CAFA;

7.      Receiving, evaluating, and approving or disapproving the Forms submitted by Class Members seeking to receive a payment pursuant to this Settlement;

8.      Receiving and evaluating all Exclusion Requests by *Berg* Class Members;

9.      Processing objections to the Settlement;

10.     Providing to FXG and Class Counsel: (i) a list of the names and addresses of all Class Members who have submitted Forms and whose Forms the Settlement Administrator has determined to constitute Valid Claims; (ii) a separate list of the names and addresses of all Class Members who have submitted Forms and whose Forms the Settlement Administrator has determined do not constitute Valid Claims; (iii) a separate list of the names and addresses of all Class Members who have submitted documents indicating that they wish to object to the Settlement; and (iv) a separate list of the names and addresses of all *Berg* Class Members who have submitted Exclusion Requests along with copies of the Exclusion Requests;

11.     Mailing, by first-class United States Mail, a notice of deficiency to each Class Member that timely submitted Forms and whose Forms the Settlement Administrator has determined to be deficient in some respect;

12.     Mailing, by first-class United States Mail, settlement payments to Class Members with Valid Claims in accordance with the Payment Calculation for each such Class Member provided to the Settlement Administrator by Class Counsel;

13.     Mailing, by first-class United States Mail, or transferring by wire pursuant to instructions provided by Class Counsel, payment(s) for attorneys' fees and costs to Class Counsel;

14.     Mailing, by first-class United States Mail, service awards to Plaintiffs;

15.     Obtaining an employer identification number (EIN) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4);

16.     Preparing and filing federal income tax returns for the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law;

17.     Cooperating with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date;

18.     Paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund;

19.    Preparing, filing, and issuing all necessary tax reporting forms for the Class Settlement Fund, including IRS Forms 1099 and W-2 regarding the distribution of payments to the Class Members, Class Counsel, and Plaintiffs;

20.    Providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 and W-2 issued to Class Members, Class Counsel, and Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities;

21.    Pay any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund solely from the assets of the Class Settlement Fund without any recourse against FXG for additional monies;

22.    Providing the Final Accounting to FXG and Class Counsel;

23.    Liquidating any remaining assets of the Class Settlement Fund after all payments to Class Members, Class Counsel, and Plaintiffs have been made and all tax obligations have been satisfied, and distributing such assets as directed by the Court;

24.    Performing such other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform; and

25.    Petitioning the Court for termination of the Class Settlement Fund once all of the duties listed above have been completed.

### D.    Payment to Class Members

Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as reasonably practicable, but no more than 30 business days after the Effective Date: mail, by first-class United States Mail, to Claimants (as defined in Section III.B) checks in the amounts determined by Class Counsel pursuant to Section III.B and drawn on an account funded by the Class Settlement Fund. One hundred and fifty (150) days from the date of issuance of checks to Claimants, the Settlement Administrator shall provide Class Counsel with a list of the names and addresses of all Claimants who have not yet cashed their checks. Class Counsel may then contact any of those Claimants to remind them that the checks must be cashed within one hundred and eighty (180) days of the date of issuance or they will be deemed null and void. To the extent checks are not cashed within one hundred and eighty (180) days of issuance, those funds shall be deposited with a *cy pres* recipient to be mutually agreed upon by the Parties, and approved by the Court on motion filed by Class Counsel. If the Parties cannot agree, Class Counsel will file a motion seeking approval of their proposed *cy pres* recipient.

## IV.    SETTLEMENT NOTICE

The Parties agree that the Settlement Notice (including the Detailed Notices), Summary Notice, and Forms provide information sufficient to inform the Class Members of the material

terms of this Settlement, the appropriate means for obtaining additional information regarding this Agreement and the Litigation, the appropriate means for either objecting (in the case of all Class Members) or submitting Requests for Exclusion (in the case of *Berg* Class Members), and the appropriate means for and information about submitting a claim for payment pursuant to the Settlement. The parties also agree that the *Berg* Class and Settlement Notice, the *Berg* Detailed Notice, and Summary Notice provide information sufficient to inform the *Berg* Class Members of the nature of the subject matter of the Litigation, appropriate means for obtaining additional information regarding the Litigation, and meet all the requirements of Rule 23(c) of the Federal Rules of Civil Procedure. To facilitate the efficient administration of this Settlement, and to facilitate payment of Valid Claims under the Settlement, the Settlement Administrator will be directed to publish the Summary Notice, to provide all Class Members with copies of the Settlement Notice and Forms, to make the Detailed Notices available on the Settlement Website, and to provide contact information for Class Counsel in the event they have questions. The Parties will request the Court to approve the Settlement Notice, Detailed Notices, Summary Notice, and Forms in the Preliminary Approval Order.

As soon as practicable, but no later than 30 days after the Court's entry of the Preliminary Approval Order, the Settlement Administrator shall send or cause to be sent, by first-class United States Mail, a copy of the Settlement Notice and Forms to every Class Member who can be identified through reasonable effort ("the First Mailing"). Before conducting the First Mailing, the Settlement Administrator will obtain or cause to be obtained address updates utilizing a national change of address database.

As soon as practicable, but no later than 30 days after the Court's entry of the Preliminary Approval Order, the Settlement Administrator will direct the Summary Notice to be published once in *The Oregonian*.

As soon as practicable, but no later than 30 days after the Court's entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website for the purpose of: (i) providing information to Class Members regarding the Settlement; (ii) allowing Class Members to download relevant documents, including the complaints in the Litigation, this Agreement, the Settlement Notice (including the Detailed Notices), the Forms, the Preliminary Approval Order, and the motions filed by Class Counsel for attorney's fees, costs, and service awards, and for Final Approval; (iii) allowing the uploading of completed Forms; and (iv) providing a toll-free number for Class Members to call with questions.

As soon as practicable, but no later than 60 days after the Court's entry of the Preliminary Approval Order, the Settlement Administrator shall send or cause to be sent, by first-class United States Mail, a copy of the Settlement Notice and Forms to every Class Member with respect to which the First Mailing was returned with a forwarding address or otherwise as undeliverable (the "Second Mailing"). Before conducting the Second Mailing, the Settlement Administrator will obtain or cause to be obtained address updates utilizing a national change of address database.

As soon as practicable, but no later than 90 days after entry of the Preliminary Approval Order, the Settlement Administrator shall mail, by first-class United States Mail, to every Class Member from whom it has not received the Forms, a postcard reminder stating that it has not

received Forms from that Class Member and reminding the Class Member of the need, if they wish to be eligible to receive a payment under the Settlement, to either mail the Forms to the Settlement Administrator, or upload the Forms to the Settlement Website, on or before the deadline stated in the Settlement Notice.

The Parties agree that the dissemination of the Settlement Notice and Forms by mail, publication, and by posting them on the Settlement Website, in the manner specified in this Section IV, satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs will request the Court to approve, in the Preliminary Approval Order, the direct mailing of the Settlement Notice and Forms, the posting of the Detailed Notices on the Settlement Website, and the publication of the Summary Notice, as set forth in this Section IV.

## V.    COSTS OF NOTICE AND CLAIMS ADMINISTRATION

All costs of: (a) preparing and disseminating the Settlement Notice, Detailed Notices, Summary Notice, and Forms provided for in Section IV above, and (b) all other Administration Expenses, including payments made for the services of the Settlement Administrator, will be payable from the Class Settlement Fund or by Class Counsel. Unless otherwise specifically agreed in writing, FXG shall not be responsible for any costs that may be incurred by, on behalf of, or at the direction of Plaintiffs or Class Counsel in (a) responding to inquiries about the Agreement, the Settlement, or the Litigation, (b) defending the Agreement or the Settlement against any challenge to them, (c) defending against any challenge to any order or judgment entered pursuant to the Agreement, or (d) for any other reason except to the extent required by law.

## VI.    PROCEDURES FOR SETTLEMENT APPROVAL

### A.    Preliminary Approval

Plaintiffs shall use their best efforts, within 14 days of the execution of this Agreement, to move the Court to enter the Preliminary Approval Order, and FXG shall not oppose said motion. The proposed deadlines to be established in the Preliminary Approval Order are as follows:

1.    30 days after entry of the Preliminary Approval Order: Date on or before which Settlement Notices and Forms will be mailed to Class Members via the First Mailing.

2.    30 days after entry of the Preliminary Approval Order: Date on or before which the Settlement Administrator will direct the Summary Notice to be published once in *The Oregonian*.

3.    30 days after entry of the Preliminary Approval Order: Date on or before which the Settlement Administrator shall establish the Settlement Website for the purpose of: (i) providing information to Class Members regarding the Settlement; (ii) allowing Class Members to download relevant documents, including the complaints in the Litigation, this Agreement, the Settlement Notice (including the Detailed Notices), the Forms, the Preliminary Approval Order, and the motions filed by Class Counsel for

attorney's fees, costs, and service awards, and for Final Approval; (iii) allowing the uploading of completed Forms; and (iv) providing a toll-free number for Class Members to call with questions.

4.    60 days after entry of the Preliminary Approval Order: Date on or before which Settlement Notices and Forms will be remailed via the Second Mailing to any Class Members with respect to whom any of the First Mailings were returned as undeliverable.

5.    60 days after entry of the Preliminary Approval Order: Date on or before which Class Counsel will file a Motion for an Award of Attorneys' Fees and Costs, and Service Awards to Plaintiffs.

6.    90 days after entry of the Preliminary Approval Order: Date on or before which the Settlement Administrator shall mail, by first-class United States Mail, to every Class Member from whom it has not received the Forms, a postcard reminder stating that it has not received Forms from that Class Member and reminding the Class Member of the need, if they wish to be eligible to receive a payment under the Settlement, to either mail the Forms to the Settlement Administrator, or upload the Forms to the Settlement Website, on or before the deadline stated in the Settlement Notice.

7.    105 days after entry of the Preliminary Approval Order: Date on or before which objections to the Settlement, the Agreement, or the amount of fees and costs that Class Counsel has requested, together with all supporting memoranda and other material, must be filed with the Court and served on Class Counsel and FXG.

8.    105 days after entry of the Preliminary Approval Order: Date on or before which any Requests for Exclusion by *Berg* Class Members must be either postmarked by the United States Postal Service or actually received by the Settlement Administrator.

9.    105 days after entry of the Preliminary Approval Order: Date on or before which any person or attorney seeking to appear at the Final Approval Hearing, for the purpose of objecting to the Settlement, the Agreement, or the amount of fees and costs that Class Counsel has requested, must file with the Court and serve on Class Counsel and FXG an entry of appearance in the Litigation and notice of intention to appear at the Final Approval Hearing.

10.    105 days after entry of the Preliminary Approval Order: Final Claims Date on or before which, to meet the timing requirement for a claim to qualify as a Valid Claim, all Forms must be either: (i) postmarked by the United States Postal Service after being placed in the United States Mail with first-class postage, addressed to the Settlement Administrator; or (ii) uploaded to the Settlement Website in accordance with the instructions provided on the website.

11.    120 days after entry of the Preliminary Approval Order: Date on or before which Class Counsel will file a Motion for Final Approval of Class Action Settlement, and for an Award of Attorney Fees and Costs, and Service Awards to Plaintiffs.

12.     The Parties will coordinate with the Court to set a date for the Final Approval Hearing that is no sooner than 135 days after entry of the Preliminary Approval Order.

**B.     Final Approval**

At the Final Approval Hearing, the Plaintiffs will request the Court to enter the Final Approval Order and the Judgment, substantially in the form of **Exhibit H** and **Exhibit I**, which will: (1) grant final approval to the Settlement and this Agreement as fair, reasonable, and adequate to the Class; (2) provide for the release of all Released Claims and enjoins Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) order the dismissal with prejudice of all Released Claims, and incorporate the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear his or its own costs and attorneys' fees, except as provided in Section VII below with respect to Class Counsel's attorneys' fees and costs; (4) authorize the Settlement Administrator to pay Valid Claims in accordance with the terms of the Agreement; (5) authorize the payment of Class Counsel's attorneys' fees and costs as detailed in Section VII below; (6) authorize the payment of service awards to each of the Plaintiffs as detailed in Section VII below; and (7) preserve the Court's continuing jurisdiction over the administration of the Settlement and enforcement of the Agreement.

**VII.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS TO PLAINTIFFS**

A.     FXG shall not oppose Class Counsel's request for attorneys' fees and costs covering all legal services provided by Class Counsel in the past and future to the members of the Class in connection with the Litigation (whether before the MDL Court or this Court), the Settlement, any appeal in connection with the Settlement, implementation of the Settlement, or otherwise in an amount not to exceed thirty percent (30%) of the common Class Settlement Fund. The motion for an award of attorneys' fees and costs shall be subject to Court approval, and the Court will determine what amount of fees and costs shall be awarded and issue an Order stating the amount of fees and costs to be awarded.

B.     FXG shall not oppose Class Counsel's request for a service award to each of the six Plaintiffs for up to ten thousand dollars ($10,000.00) each, above what each is otherwise eligible to receive under Section III of this Agreement. The service awards shall be paid from the common Class Settlement Fund.

C.     The agreed amounts set forth above in this Section will be subject to Court approval, which approval shall be stated in the Final Approval Order of the Court. Upon the Effective Date, the Settlement Administrator shall, as soon as reasonably practicable, but no more than ten (10) business days after the Effective Date, cause to be paid to Class Counsel and the Plaintiffs those amounts specified above from the Class Settlement Fund, as approved by the Court. Class Counsel shall provide the Settlement Administrator in a timely manner all information needed with respect to the issuance of the checks for those amounts, including their and Plaintiffs' tax identification/social security numbers on Form W-9. The Settlement

Administrator shall have no obligation to make payments under this Section until such information is received.

If any notice of an appeal from the Final Approval Order, the Judgment thereon, or any Order in the Litigation is filed by any Party, objector, Class Member, or other person, the Settlement shall not be or become final or effective, and the Settlement Administrator shall not be obliged to make any payment to Class Counsel or to Plaintiffs, until 10 business days after the Effective Date.

D.      Except as identified in this Section VII and upon transferring the Settlement Payment to the Class Settlement Fund, FXG will have no responsibility or liability for any amount of attorneys' fees or costs for work performed or expenses incurred in connection with the Litigation to any of the Plaintiffs' counsel or any other counsel for Plaintiffs or any Class Member, including any prior firm of the Plaintiffs' counsel or those involved in the MDL Proceeding. In the event any claim for attorneys' fees or costs in connection with the Litigation is made by any counsel other than Class Counsel, the Parties agree that FXG has no obligation of any kind to satisfy any such claim. Class Counsel agree to indemnify FXG for any claims made against FXG by any counsel other than Class Counsel for fees or costs for work performed in connection with the Litigation. Class Counsel represent that there are no liens related to any fees associated with the claims of the Class Members as of the execution date of this Agreement. FXG shall have no responsibility or liability for any amount of attorneys' fees or costs attributable to the Lawsuit, including any incurred in the MDL proceedings.  Any attorneys' fees or costs dispute between Class Counsel and any other attorney(s) will not interfere with the Settlement, the provisions of this Settlement Agreement, the dismissal of the Litigation, or the releases obtained pursuant to the Settlement Agreement.

## VIII.   RELEASE

Upon entry of the Final Approval Order by the Court, the Litigation shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims (as defined in Section I.R above) shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees.

In connection with such release of claims, Plaintiffs and the Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they may have against Releasees. In furtherance of such intention, the release herein given to the Releasees by the Plaintiffs and Class Members shall be and remain in effect as a full and complete general release of all Released Claims.

Notwithstanding the above, the Court shall retain jurisdiction over the Parties, the Class Members and the Settlement with respect to the future performance of the terms of this Settlement Agreement, and to assure that all payments and other actions required by the Settlement are properly carried out.

## IX.     COVENANT NOT TO SUE

Plaintiffs, on behalf of themselves and the Class Members (a) covenant and agree that neither Plaintiffs nor any of the Class Members, nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims; (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that this Settlement shall be a complete bar to any such action.

## X.     REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.     Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income tax consequences of this Settlement, and fully understands and accepts the terms of this Settlement.

B.     Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs are releasing in this Agreement, and no portion of any payment to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no person other than the Plaintiffs and the Class Members have any legal or equitable interest in the claims, demands, actions, or causes of action to be released in this Agreement.

C.     Any other person or entity (including, but not limited to, insurers, lien holders, business partners, related or associated business entities, or other creditors) that has any judgments, liens, subrogation interests, or related claims which arise out of the Released Claims or the damages alleged by the Plaintiffs and the Class as a result of the Released Claims must be satisfied from the payments to Claimants as detailed in Section III. Plaintiffs and Class Members agree that they are liable for, and will release, hold harmless, defend, and indemnify the Releasees from and against any and all Released Claims, known or unknown, that may be brought by any person, firm, corporation or other entity, including any lien holders, against the Releasees for any such judgments, liens, interests or claims that exist arising out of the Released Claims.

D.     None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

E.      Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that Party and his or its attorneys.

F.      Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

G.      Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement or any provision hereof.

H.      Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.

I.      It is understood and agreed that this Agreement is for the compromise of disputed claims and is not to be construed as or deemed to be an admission of any liability, fault, or responsibility on the part of FXG or any other Releasee.

J.      It is understood and agreed that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

K.      This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions. It may be amended only by an agreement in writing, signed by all Parties hereto.

L.      The Parties agree that any dispute regarding the interpretation or enforcement of the terms of this Settlement or in connection with this Agreement shall be resolved by the Court.

M.      Class Counsel, FXG's in-house counsel, and FXG's undersigned outside counsel agree that they will not issue or cause to be issued any press release directed to any media representative regarding the Litigation or the Settlement (except as required to effectuate notice under this Agreement or as required by law), except that subject to prior approval of the content by FXG, Class Counsel may post information relating to the Settlement on their firm website, with links to the Settlement Website.

## XI.    MISCELLANEOUS

### A.     Conditional Nature of Agreement

At Class Counsel's option, expressed in written notice to FXG's counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of Plaintiffs or the

Class, or fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the form submitted by the Parties, except that a court ruling regarding Class Counsel's attorneys' fees and costs shall not be a basis for withdrawal. At FXG's option, expressed in written notice to Class Counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of FXG, or fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the form submitted by the Parties. Any appeal by Class Counsel of the attorneys' fees and costs awarded by the Court in connection with this Settlement shall not be a basis for any Party to have this Agreement become null and void. If this Agreement becomes null and void, the Parties shall move forward with the Litigation as though no settlement had been reached, all of the Parties to the Litigation being placed in the same position they were before this Settlement was proposed, negotiated, and agreed upon.

**B.    Severability**

None of the terms of this Agreement is severable from the others. However, if the Court should rule that any term is void, illegal, or unenforceable for any reason, FXG, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations to the Class), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions ultimately approved by the Court.

**C.    Effectiveness, Amendments, and Binding Nature**

This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the Parties, including Plaintiffs on behalf of themselves and the Class, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that Party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties and the Class Members and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Releasees other than FXG, which is a Party, are intended to be third-party beneficiaries of this Agreement.

**D.    Cooperation in Implementation**

FXG, Plaintiffs, and their respective counsel (including Class Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

**E.    Governing Law**

This Agreement shall be construed and governed in accordance with the procedural and substantive laws of the State of Oregon without regard to any principles of choice of law, except that all matters of federal tax law and the Class Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal law.

### F.    No Admission of Liability

The Parties are entering into this Settlement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to the Settlement shall be construed, deemed, or offered as an admission by any of the Parties, or by any member of the Class, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, and regardless of whether this Agreement ultimately becomes effective.

### G.    No Retaliation by FXG

FXG shall not target, retaliate, discriminate, or otherwise take any adverse action against either Plaintiffs or any Class Member by reason of the facts that any of them (a) instituted or in any way participated in the Litigation or (b) elects or indicates an intention to participate or not to participate in the Settlement.

### H.    Income Tax Reporting

No representation has been made to the Plaintiffs, Class Members, or their attorneys by FXG regarding the taxability of any portion of the payments under this Agreement. Plaintiffs, Class Members, and Class Counsel are solely responsible for all of the income tax reporting, accounting, and payment, or other disposition or obligations related to the payments described in this Agreement, except that the Settlement Administrator will provide Plaintiffs and Class Members with copies of IRS Forms 1099 and/or W-2 as applicable for any payments the Class Settlement Fund makes to them under this Agreement.

## I.    Signatures

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

FOR PLAINTIFFS AND THE CLASS:          FOR DEFENDANT:


STOLL STOLL BERNE LOKTING &            FedEx Ground Package System, Inc.
SHLACHTER, P.C.


_____      _____
By:  Steve D. Larson                   By:
     Mark A. Friel                     Its:

Counsel for Plaintiffs Edward Slayman, Dennis
McHenry, Jeremy Brinker, Jon Leighter, David
Spicer, Timothy Berg, and the Class

## I.    Signatures

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

FOR PLAINTIFFS AND THE CLASS:          FOR DEFENDANT:

STOLL STOLL BERNE LOKTING &          FedEx Ground Package System, Inc.
SHLACHTER, P.C.

By:  Steve D. Larson                              By:  WARD B. STRANG
        Mark A. Friel                                 Its:  Executive VP ; COO

Counsel for Plaintiffs Edward Slayman, Dennis
McHenry, Jeremy Brinker, Jon Leighter, David
Spicer, Timothy Berg, and the Class

26